**MOLTON, ALLEN & WILLIAMS, INC., Plaintiff,**

v.

**Carla A. HILLS et al., Defendants.**

**Civ.A. No. 76–0054.**

United States District Court, Dist. of Columbia, Civil Division.

April 25, 1978.

John F. Dienelt, Washington, D.C., for plaintiff.

R. Craig Lawrence, Asst. U. S. Atty., U. S. District Court, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This action for breach of contract to sell FHA-insured mortgage options is before this Court on defendants' motion for summary judgment and plaintiff's motion for partial summary judgment. The question before us at this time is one of contract formation, i. e., did the parties enter into binding contracts before defendants' cancellation of the mortgage sale program.[1]

A. *Background.* The facts may be briefly stated. On October 16, 1975, the Government National Mortgage Association (GNMA) announced the institution of a Project Mortgage Sale Program for the sale of Federal Housing Administration mortgages and options, through its agent the Federal National Mortgage Association (FNMA). On October 21, plaintiff submitted 32 fully executed option applications in proper form, and a tender of the appropriate fee.[2] The following afternoon, Octo-

---

1. We presently are concerned only with the existence of liability: the damages issue has been reserved for future analysis pending our determination of the liability issue, and our jurisdiction over this controversy has previously been established. *Molton, Allen & Williams, Inc. v. Harris et al.*, No. 77–1902 (D.C.Cir. Jan. 6, 1978) (per curiam).

2. Plaintiff also submitted applications for six options which were in delinquent status. The associated mortgage option acceptance forms were never executed, and were returned to plaintiff with the 32 forms which are addressed in depth by this decision. No contract was ever formed as to these six options: we will not execute the contracts on behalf of defendants

ber 22, an official of FNMA executed the acceptance portions of the option applications. On October 23, an FNMA official by telephone informed plaintiff that the options had been granted; it was agreed that the executed forms would be *mailed* to plaintiff. Before those options were mailed, GNMA suspended the Project Mortgage Sale Program and informed plaintiff that it would not issue the options despite the understanding established and confirmed by the telephone conversation.

Our analysis must focus on Chapter 10, Section 1003a(2) of the GNMA Sellers Guide for the Project Mortgage Sales Program (Guide), said chapter being referenced by the program announcement as providing terms and conditions for sales, which states as follows:

> Acceptance by GNMA of a Project Mortgage Option Application *shall* be indicated by completing and executing the form of "Acceptance" provided thereby, *and returning one executed copy to the applicant.* Such acceptance shall constitute the issuance of a Project Mortgage Option on the terms provided thereby. (emphasis added)

Defendants, conceding the execution of the application forms, argue that no contracts arose since there was no return of the executed copies to the applicant. Plaintiff argues that contracts were formed and alleges that defendants must answer for failure to honor the terms of their contractual obligations.

B. *Analysis.*

1. *Nature of the application forms.* At the outset, we consider the legal status of the papers involved in this controversy, particularly analyzing plaintiff's alternative argument that the published October 16 notice constituted an offer which was accepted by submission of the appropriate applications for the mortgage options.

The notice directed interested parties to submit applications to appropriate FNMA regional offices and set forth specifications regarding the applications. To apply, an interested party was required to submit a simple application form and tender the appropriate fee; applications were processed on a first-come, first-served basis among qualified applicants.[3] It is plaintiff's position that the program announcement constituted a definite proposal by defendants to sell mortgage options, which required no further action on the part of GNMA and was therefore an offer which plaintiff accepted by submission of the instant applications.

While we recognize that there may be circumstances in which a public announcement may constitute an offer, we are certain that this case presents no such circumstances. The program announcement was clear in "inviting offers" for mortgages and options. *See Primary Metal & Mineral Corp. v. United States,* 556 F.2d 507, 509 (Ct.Cl.1977) (absence of contract-like language in program announcement militates against a finding that announcement constitutes offer). More importantly, defendants by applicable regulations had retained the power to reject any application in their discretion; this discretionary authority constitutes a significant factor distinguishing cases relied upon by defendants. *See R. E. Crummer & Co. v. Nuveen,* 147 F.2d 3 (7th Cir. 1945); *Mocatta & Goldsmid, Ltd. v. United States,* Cong. Ref. No. 149–73 (Commissioner's Opinion filed March 31, 1976), rev'd sub nom. *Primary Metal & Mineral Corp. v. United States, supra.* The submission by plaintiff of the application forms was an offer by plaintiff, which defendants were free to accept or reject.

2. *Permissible forms of acceptance.* We turn now to the crucial and more difficult question of determining whether defendants accepted that offer. Plaintiff insists

---

when they themselves declined to do so, merely because plaintiff anticipated that execution would be forthcoming upon the curing of the delinquencies.

**3.** Applications for these options submitted subsequently to plaintiff's applications were rejected pro forma due to FNMA's prior receipt of conforming applications. Plaintiff's Statement of Material Facts Not in Dispute, §§ 24–25.

that the oral communication of October 23 was a sufficient communication to establish contract formation. The argument relies heavily upon the custom and practice in the mortgage industry and upon the principal of constructive delivery.

■■■ In analyzing the requirements for contract formation, we are unable to evaluate or endorse plaintiff's offer of evidence which would direct a result contrary to the clear language of the Guide. The appropriate form of acceptance is unambiguously noted:

Acceptance *shall* be indicated by completing and executing the form of "Acceptance" provided thereby, and returning one executed copy to the applicant. (emphasis added)

It is an elementary principle of contract law that the terms of the contract are controlling and will not be varied by offers of parol evidence. *See Northwestern Industrial Piping, Inc. v. United States,* 467 F.2d 1308, 1314, 199 Ct.Cl. 540 (1972). Plaintiff's attempt to establish an ambiguity by emphasizing the word "indicated" is labored and unpersuasive. Similarly, the applicable terms provide for a specific form of delivery, i. e., "returning one executed copy to the applicant," and plaintiff's offer of principles of constructive delivery, however applicable in other factual contexts, is unavailing.[4]

3. *Waiver of terms of contract.* It is beyond dispute that the GNMA Sellers Guide by express terms requires that an executed form be transmitted to the applicant to effectuate an acceptance, and that such specific requirement was not met. The only remaining question is whether

there was a waiver by defendants of this requirement. Plaintiff has made an extensive showing of the custom and practice in the mortgage industry to support its contention that there was a waiver under the present facts. Defendants have proffered alternative arguments in denying the existence of a waiver: first, FNMA was without authority to bind defendant GNMA to contractual obligations by methods other than those statutorily authorized; and second, even assuming the existence of such authority, there was no waiver of the delivery requirement in this case. Plaintiff argues that FNMA should be regarded as GNMA's agent for all purposes, based upon its investiture with "full power and authority to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by this section." 24 C.F.R. § 300.11(b). Emphasizing that the mortgage banking industry regularly operates in reliance upon oral representations, plaintiff insists that the delivery requirement was waived.

■■■ After thorough and careful consideration of the facts of this case, we have concluded that there was no waiver of the delivery requirement and that no contracts were formed. Our conclusion has been influenced substantially by our concern that easy and facile inference of a waiver would establish a troublesome precedent which could undermine the ability of the Government to control its agencies in the conduct of future contract negotiations by encouraging every disappointed contract applicant to seek judicial assistance when it failed to satisfy a particular condition precedent to contract formation.[5] *See* 1 *Williston, Con-*

---

4. Plaintiff directs our attention to cases involving particular questions of timing—e. g., insurance, leases, and bankruptcy—where, in order to avoid harsh results in individual cases, constructive delivery principles were applied to establish a completed transaction although express provisions regulating contract formation were not satisfied. We are not persuaded that this equitable concept should be extended to a contract situation involving the Government: the necessity for uniformity and predictability of relationships in these situations militates against a case-by-case analysis of factors to

determine contract existence. See also discussion pp. 495–496 *infra.*

5. Our holding should not be interpreted to represent the proposition that the Government never may waive the terms of an applicable regulation. It is conceivable that a government agent could by express statement—e. g., "we will dispense with the formality of certifying this agreement by written memorandum"— waive a procedural limitation respecting the method for forming a contract. *See* Guide § 106 (GNMA reservation of authority to waive

*tracts,* § 76 (3d ed. 1957) (stipulated mode of acceptance binding if more than suggestive). In contrast, our insistence upon strict compliance with explicit and fully disclosed provisions will encourage persons such as plaintiff to meet, to the letter, all directives respecting contract formation. It has been said more than once that "persons who deal with the Government must turn square corners." In this case, plaintiff could have established the sought-after contracts by securing the return of one executed copy of each application form.[6]

We reach this result fully cognizant of the circumstances which caused plaintiff's agent to minimize the importance of securing executed forms. Persons in the mortgage banking industry indeed may transmit oral assurances and operate in reliance thereupon. *See* Plaintiff's Brief in Support of Motion for Partial Summary Judgment on the Issue of Liability at 6–11. However, such persons must be deemed to operate under peril that the contract deliberations will become "snagged" before formal acceptance. *See Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Brown v. United States,* 207 Ct.Cl. 768, 524 F.2d 693, 701 (1975).

In fact, the program announcement did not make any reference to a telephone commitment procedure delineated by the Guide and invoked in connection with *other* mortgage sale programs. Guide § 410(a). *See e. g.,* Guide §§ 917–18 (insured mortgages); §§ 921–22 (unsubsidized project and home mortgages). Likewise, it is clear that plaintiff attached at least some significance to securing the executed forms. *See* Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment at 23.

■ Our conclusion embodies the reluctant recognition that this lawsuit is not the

proper vehicle by which to compel the Government to accept standards of fair dealing applicable to controversies between private litigants. *See* Canon VIII, Canons of Ethics and Standards of Practice of the Mortgage Bankers Association ("all oral agreements shall be accorded the same sanctity given to written contracts, and no agreement or commitment made by a member shall be breached by evasion or equivocation"). Here FNMA gave oral assurance that the contracts had been executed; an earnest money check accompanying the application was deposited to a Government account; the date of execution of the forms was treated as the operative contract date; and the Government announced an increase in the option price shortly after advising plaintiff that a contract had not been formed. While equitable principles would support an assessment of liability in this action, we are under an obligation to apply strict principles of contract law. An express condition precedent to contract formation, which was embodied in mandatory rather than suggestive language in the Guide, was not satisfied.

We therefore conclude that plaintiff's motion for partial summary judgment should be denied and that defendants' motion for summary judgment should be granted.

---

requirements of Guide). *Compare Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1974) (agent may not commit Government to obligation beyond substantive limits of authorizing legislation). Here, however, plaintiff solicits this Court's as-

sistance in inferring a waiver of an admittedly applicable provision.

**6.** Plaintiff's agent was advised that the executed forms were being held for plaintiff at FNMA headquarters. Plaintiff's Statement of Material Facts Not in Issue ¶ 32.