**MOLTON, ALLEN AND WILLIAMS, INC., Appellant,**

v.

**Patricia R. HARRIS, Secretary, Department of Housing and Urban Development et al.**

**No. 78–1708.**

United States Court of Appeals, District of Columbia Circuit.

Argued 12 Sept. 1979.

Decided 7 Jan. 1980.

John F. Dienelt, Washington, D. C., with whom Philip N. Brownstein, Barry P. Rosenthal and David J. Butler, Washington, D. C., were on the brief, for appellant.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert,* U. S. Atty., John A. Terry, Peter E. George and R. Craig Lawrence, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and GORDON,** Senior United States District Judge for the Western District of Kentucky.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Molton, Allen & Williams, Inc. appeals from a district court order granting summary judgment to the Secretary of Housing and Urban Development. Appellant filed this action claiming that the Secretary breached a contract to sell mortgage options. On cross motions for summary judgment, the district court held that government regulations precluded a binding contract under the circumstances, and granted summary judgment to the government. We conclude that summary judgment should have been granted instead to appellant on the issue of liability and we remand accordingly.

On 16 October 1975 the Government National Mortgage Association (GNMA), an agency within the Department of Housing and Urban Development, announced a program to sell federally insured mortgages and options. Under the program, terms of sale were specified by chapter 10 of the GNMA Sellers' Guide. Sales were to be made on a first come, first served basis through a nongovernmental agent of GNMA, the Federal National Mortgage Association (FNMA).

On 21 October 1975 appellant submitted to FNMA's Atlanta office thirty-eight properly executed applications for mortgage options. Appellant was the first to apply and tender the required fee for these options. The next day the Assistant Regional Vice President for FNMA's Atlanta office, Thomas J. Swanson, Jr., executed the acceptance portion of thirty-two of the applications; he did not execute the other six applications because those mortgages were delinquent and thus not eligible for sale. Effective noon of this same day, GNMA issued a notice raising the price of mortgages under the program. This price increase was not applied to the options that appellant had offered to purchase.

On the morning of 23 October, appellant's Assistant Vice President Michael P. Leddy phoned Robert G. Pike, a loan representative in FNMA's Atlanta office. Pike informed him that the thirty-two option applications were in good order and that the acceptance portions had been signed. Pike offered to mail the forms to Leddy. Later that day, before the option contracts were mailed to appellant, GNMA suspended the sale program, and FNMA's Washington office instructed the Atlanta office not to issue the options to appellant. After pursuing administrative remedies, appellant filed suit in United States District Court for the total difference between market price and contract price for the thirty-eight options.

The district court granted summary judgment for the Secretary and GNMA, finding no contractual obligation on the govern-

* United States Attorney at the time the brief was filed.

** Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

ment's part as to any of the options.[1] Molton, Allen & Williams now appeals, claiming a binding contract for the thirty-two executed option applications. Appellant does not challenge that part of the district court decision which found no contract as to the six unaccepted option applications.[2]

On grounds that the executed application forms had not been returned to appellant when the sale was suspended, the government pleads lack of an enforceable contract. The governing provision of the GNMA Sellers' Guide, binding on parties that transact with GNMA, states that GNMA's acceptance of an option application shall be indicated by its completing and executing the acceptance portion of the application, and by its "returning one executed copy to the applicant."[3] This rule of agency procedure establishes a condition precedent to contract formation, as the district court found; and the parties did not satisfy the condition.

But there is a further issue, whether the government agent dealing with appellant had authority to and in fact did waive this provision. The same Sellers' Guide which states the conditions for a valid contract also permits GNMA to waive those conditions. "GNMA reserves the right, consistent with law, to alter or waive any of the requirements contained herein . . . ."[4] Robert Pike of FNMA shared in this authority to waive requirements of the Sellers' Guide. He was an attorney in fact of GNMA,[5] and GNMA had granted by regulation to its attorneys in fact the full authority to do all things necessary and proper to their duties, "to all intents and purposes, as the Association might or could do."[6] By virtue of these provisions, the government agent who dealt with appellant had authority to waive any conditions precedent set by the Sellers' Guide.

The district court held there could be no waiver of a regulatory provision except by express statement by a government agent; and there was no such statement here. Since it found no waiver of the condition precedent, the court further concluded that this condition prevented it from applying equitable principles to hold the government to standards of fair dealing that apply to private parties. Based largely on the Supreme Court's decision in *Federal Crop Insurance Corp. v. Merrill*,[7] the district court reasoned that parties who contract with the government must strictly comply with conditions of contract formation, must "turn square corners," and must accept the risk that contract dealings may become snagged before formal acceptance.[8]

The *Merrill* opinion does indeed place strict requirements on parties who deal with the government, even where the requirements produce harsh results; but we must examine *Merrill* so as not to extend this rule further than its rationale warrants. *Merrill* follows a traditional rule that the government is not estopped by the action of its agent when that agent acts without authority or contrary to law.[9] When the agent enters a contract that does not satisfy statutory or regulatory conditions, *Merrill* holds, the contract does not bind the government. The rationale is that a single official cannot override a statute or regulation, and that citizens dealing with the government are charged with knowledge of the law.[10]

But the *Merrill* holding applies only where a government agent acts beyond

---

1. *Molton, Allen & Williams, Inc. v. Hills*, 449 F.Supp. 492 (D.D.C.1978).

2. Brief for Appellant at 16 n.10.

3. GNMA Sellers' Guide, ch. 10, § 1003a(2), Joint Appendix (J.A.) at 208.

4. GNMA Sellers' Guide § 106, J.A. at 220.

5. J.A. at 28, 46.

6. 24 C.F.R. § 300.11(b) (1979).

7. 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947).

8. *Molton, Allen & Williams, Inc. v. Hills*, 449 F.Supp. at 496.

9. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. at 384, 68 S.Ct. 1; *see Utah Power & Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917).

10. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. at 384–85, 68 S.Ct. 1.

legal authority; *its rationale does not extend to a failure to meet a regulatory condition by a government agent who has authority to waive that condition.*[11] It is well established by precedent that when a government agent acts within his authority, the government can be estopped by his actions.[12] Unless as in *Merrill* there is a statute or regulation to the contrary, the government is subject, when it enters the domain of commerce, to the same principles of justice that govern private parties.[13]

The government argues that it would be absurd to conclude that FNMA had authority to dispense with conditions precedent without the assent of GNMA;[14] but in light of the market conditions for mortgage transactions, it was not only reasonable but also highly convenient for GNMA to grant this authority in order to operate effectively in the market. Mortgage prices fluctuate rapidly, and purchasers and sellers often need the certainty of an immediate commitment to a binding contract, so they in turn can enter into related commitments necessary to a successful transaction.[15] The government agent can provide the needed commitment very simply by waiving the delivery requirement and reporting orally that the application has been accepted and signed; without this expedient the government would find it more difficult to find willing takers at a given price. Hence we find it perfectly reasonable to interpret GNMA regulations exactly as they read, as a delegation to FNMA of authority to waive conditions in the Sellers' Guide.

Since the government agents in this case had authority to waive, *Merrill* does not apply, and we look instead to the standards of waiver that would govern between private parties. The common law concept of waiver, as we discuss below, includes inferences from the words and actions of the parties. The district court therefore erred when it limited waiver to express statements.[16] This error will require reversal of summary judgment if the facts when viewed favorably to appellant can support an inference that FNMA waived the delivery requirement. Further, if the undisputed facts show that there clearly was a waiver, we must order summary judgment for appellant.

Waiver can occur by mutual agreement when the parties manifest an intent to be bound by the contract, even though a stated condition precedent has not been satisfied.[17] It is not contested that Pike informed Leddy by telephone on 23 October that the application forms were in good order and had been executed.[18] In his deposition, Thomas J. Swanson of FNMA's Atlanta office stated that exactly these facts are customarily understood as a confirmation of a binding contract, definitely by him and also, he thought, by contract applicants.[19] Moreover, Swanson indicated that

**11.** While one circuit has apparently cut back on the *Merrill* rule, *see California Pac. Bank v. Small Business Administration*, 557 F.2d 218 (9th Cir. 1977); *United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973), we do not in this opinion deny the vitality of *Merrill* within the proper sphere of its holding.

**12.** *See, e. g., Cooke v. United States*, 91 U.S. 389, 398, 23 L.Ed. 237 (1875); *Ritter v. United States*, 28 F.2d 265, 267 (3d Cir. 1928); *United States v. Eaton Shale Co.*, 433 F.Supp. 1256, 1272 (D.Colo.1977).

**13.** *See S.R.A., Inc. v. Minnesota*, 327 U.S. 558, 564, 66 S.Ct. 749, 90 L.Ed. 851 (1946); *Lynch v. United States*, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *Cooke v. United States*, 91 U.S. 389, 398, 23 L.Ed. 237 (1875); *Ritter v. United States*, 28 F.2d 265, 267 (3d Cir. 1928);

*Traveler's Indemnity Co. v. First Nat'l State Bank*, 328 F.Supp. 208, 216 (D.N.J.1971).

**14.** Brief for Appellees at 16 n.13.

**15.** *See* Affidavit of Milton A. Abrams, J.A. at 155; Affidavit of John B. Johnston, *id.* at 167; Affidavit of Raymond H. Lapin, *id.* at 183. These descriptions of the volatility of the mortgage market are not contradicted by appellee.

**16.** *Molton, Allen & Williams, Inc. v. Hills*, 449 F.Supp. at 495 n.5.

**17.** *See* 1 Williston on Contracts § 76, at 251 (3d ed. 1957).

**18.** J.A. at 34, 48.

**19.** *Id.* at 132–33.

in this particular case he thought as of 23 October that Molton, Allen & Williams "had the contract." [20]  Swanson was well versed in industry custom, as an employee of FNMA since 1957 and the officer in charge of project mortgage transactions.[21]  The industry custom of relying of FNMA's and GNMA's oral commitments in mortgage transactions, described in affidavits in the record,[22] further indicates that it was reasonable for appellant to consider the telephone conversation of 23 October to be an indication of a binding contract and a waiver of the delivery requirement.

Appellees do not contradict those who state in affidavits that they have customarily relied on oral FNMA and GNMA commitments.  The government instead argues that this industry custom is not relevant to the mortgage sales program in question.  Carl M. Grenn, Director of Loans for GNMA, states by affidavit that oral telephone commitment procedures used for other GNMA programs are not applicable to this mortgage sales program, and that in his opinion no established trade custom applies to this program.[23]  From this the government argues that the trade custom applies only to programs with a telephone commitment procedure.[24]  We note, however, that the affidavits and the Swanson deposition clearly refer to oral commitments not made through the telephone commitment procedure.  According to the GNMA Sellers' Guide, telephone commitments are made through a single GNMA number in Washington, D.C.[25]  But the affidavits mention oral commitments from FNMA as well as GNMA officials, and Swanson refers to oral commitments he has made in past transactions.[26]  These constitute evidence of a custom of relying on oral

FNMA commitments where the telephone commitment procedure is not applicable; thus, Grenn's opinion does not contradict a major portion of appellant's evidence of trade custom.  The undisputed facts show this program to be sufficiently similar to other FNMA and GNMA mortgage transactions that the same trade customs could reasonably be expected to apply—indeed, it was a rapid fluctuation in the value of mortgage options that occasioned this dispute; *this is precisely the reason for the custom of relying on oral commitments.*

When we look at the undisputed facts in light of the objective theory of contract formation, we find that industry custom gave both parties clear reason to believe that the telephone conversation of 23 October between Pike and Leddy was a confirmation of a binding contract.  First, thirty-two option contracts were duly executed.  Second, the bidder was told by an official duly authorized to waive any procedural requirements that he *had* a contract.  Third, the bidder was told that, if he did not wish to pick up the documents immediately, the government agent would mail them that day.  Fourth, the government cashed the bidder's check the day it executed the documents.

█ No legitimate purpose would be served by remanding this case for further consideration of the liability issue.  The district judge has already stated his belief that apart from the strict requirement of the delivery condition, equitable principles would support a finding of liability.[27]  Since we find the condition waivable, equitable principles may be invoked to find a waiver and a binding contract, as discussed above.

---

20.  *Id.* at 140.

21.  *Id.* at 73.

22.  *See* Affidavit of Milton A. Abrams, *id.* at 155;  Affidavit of John B. Johnston, *id.* at 167;  Affidavit of Raymond H. Lapin, *id.* at 183;  Affidavit of C. T. Traylor, *id.* at 196–97.

23.  *Id.* at 159–60.

24.  *See* Brief for Appellees at 17.

25.  GNMA Sellers' Guide § 419, J.A. at 213.

26.  J.A. at 132.  We find that the government counsel's objections to these statements of Swanson on grounds of hearsay and legal conclusion are not valid and do not prevent us from considering this evidence on cross-motions for summary judgment.

27.  *Molton, Allen & Williams, Inc. v. Hills,* 449 F.Supp. at 496.

Equity also justifies an estoppel theory of waiver here,[28] since appellant relied on FNMA's customary practice of considering oral commitments binding, and did not have the contracts picked up immediately at FNMA's Atlanta office.[29]

We note some of the limits of our decision. First, industry custom cannot in itself override a regulation; custom becomes important in this case only because GNMA gave its agents authority to waive the regulation. Second, we do not fear "easy and facile" inference of waiver in the future;[30] waiver can occur only where the government agent has authority to waive, and then only under circumstances that would indicate waiver between private parties. In this case it was well established custom that showed the parties intended by their actions to waive the delivery requirement.

Finally, our decision will not create unpredictability or impose unacceptable costs on the government. The great hindrance to predictability occurs when GNMA grants its agents authority to waive the delivery requirement, and they customarily do so, but GNMA feels free to reimpose the written acceptance and delivery requirement whenever price changes make it advantageous to the government to do so. There is no reason in this case why the government should be allowed such an unfair and dishonest manner of doing business. A private firm in this position would not only be held liable, but quite likely would also be investigated for unfair practices. If the government were to become the only party in the mortgage market whose word cannot be trusted, it would incur the higher costs of slower transactions and more cumbersome procedures. This it can choose to do, of course, by a regulation consistently followed rather than customarily waived. But it has not done so here, and it should not be encouraged toward a course of action inevitably resulting in higher costs. By holding the government to its oral commitment here, an oral commitment which both Swanson and Pike, its experienced agents, thought was binding, the court restores not only the honor of the government but its credit as well.

The decision below is therefore vacated and remanded with instructions to enter judgment for appellant on the issue of liability.

*So ordered.*

**28.** *See* 5 Williston on Contracts § 679, at 253 (3d ed. 1957).

**29.** Appellant also contends that we should find the delivery condition satisfied through a theory of "constructive delivery." If not for the waiver provision, we would be reluctant to apply this theory to satisfy a specific condition precedent for a government contract; even in private insurance contract cases the courts are reluctant to use constructive delivery where the contract specifically requires personal delivery to the insured. *See* 1 Appleman on Insurance § 133, at 201 (1965); 1 Couch on Insurance § 10:11, at 432 (2d ed. 1959). But when the delivery condition can be waived, the proper standard for determining waiver, as we have discussed above, is substantially the same as the standard for constructive delivery; the intent of the parties governs, and physical transfer of the document is not required. *See Life & Casualty Ins. Co. v. Gurley*, 229 F.2d 326, 329 (4th Cir. 1956). For example, the fact that on 23 October FNMA was holding the executed contracts for the benefit of appellant, either to be mailed or picked up, J.A. at 35, 48, shows an intent of the parties for appellant to control the disposition of the contracts, and supports equally the waiver and the constructive delivery theory. That FNMA deposited appellant's check, *id.* at 32, 47, offers further support for both theories.

**30.** *Molton, Allen & Williams, Inc. v. Hills*, 449 F.Supp. at 495.