[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE DEFENDANTS' COUNTERCLAIM
 STATEMENT OF THE CASE
This is an action instituted by the plaintiff, Federal National Mortgage Association (plaintiff or "FNMA"), to foreclose a mortgage executed by the defendants, Celestino and Alves Fernando. On June 1, 2001, the plaintiff withdrew the foreclosure complaint, but still pending before the court is the counterclaim the defendants filed against the plaintiff.
In the counterclaim, the defendants allege that they made regular monthly payments of $968.47 on the mortgage, but in August, 1997, they received a bill for $1471.37 from the plaintiff or its agent Fleet Mortgage Corporation. The bill did not explain why the defendants' payment increased from $968.47 to $1471.37. In November, 1997, an employee of the plaintiff or its agent told Celestino Alves that the problem had been found and corrected. Nevertheless, the defendants continued to receive bills for $1471.37. The defendants continued to make the monthly payments in the correct amount until March, 1998, when the plaintiff refused to accept these payments and began to return them to the defendants. Ultimately, the plaintiff accelerated the debt, demanded full payment and instituted this foreclosure action. The defendants allege that despite their efforts to acquire an explanation, the plaintiff never explained to them why the monthly bill increased. The defendants further contend that under these circumstances, the plaintiff wrongfully CT Page 5783 accelerated the debt and instituted this action.
In their counterclaim, the defendants claim that they have been damaged by the plaintiff's conduct. The first count alleges that the plaintiff or its agent, Fleet Bank, breached the terms of the note and mortgage. The second count alleges breach of the duty of good faith and fair dealing. The third count alleges that the plaintiff or its agent violated the Connecticut Unfair Trade Practices Act, General Statutes Section 42-110g
("CUTPA"). The fourth count alleges that the plaintiff or its agent acted negligently or recklessly.
FNMA has moved for the entry of summary judgement in its favor on the counterclaim. "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorably to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to s judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Community Action forGreater Middlesex County, Inc. v. American Alliance Ins. Co.,254 Conn. 387, 398, 757 A.2d 387 (2000).
In support of its motion for summary judgment, the plaintiff contends that because it is an instrumentality of the United States, the defendants' claims are barred by Federal Crop Ins. Corp. v. Merrill,332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The court disagrees with the plaintiff's position that Merrill is applicable to the allegations of the defendants' counterclaim and the motion for summary judgment is denied.
 DISCUSSION Federal Crop Ins. Corp. v. Merrill, supra, involved the federal crop insurance program which is operated by a corporation within the Department of Agriculture. In Merrill, an agent of the corporation informed the plaintiff that his crops were insurable and would be covered under the government's crop insurance program. On the basis of these representations, the plaintiff planted 460 acres of wheat that were subsequently destroyed by a drought. After review, the corporation determined that the re-seeded portions of the acreage were not insurable under the program and denied the plaintiff's claim for loss as to this CT Page 5784 wheat.
In upholding the government's denial of the claim, the Supreme Court acknowledged that a private insurer under similar circumstances would be bound by the representations of its agent, but the doctrine of estoppel is inapplicable to bind the government in the operation of a program controlled by federal statute and regulation. As explained by the court, "[t]he Government may carry on its operations through conventional executive agencies or through corporate forms especially created for defined ends. . . . Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority." Id., 384. In summary,Merrill held that the negligent misrepresentations of an agent of the government cannot be relied on to estop the government and require it to expend public funds contrary to federal law.
The plaintiff contends that the defendants are complaining about the wrongful actions of its servicer, Fleet Bank, and consequently, underMerrill, the plaintiff "cannot be found liable for. those actions without the risk that the unauthorized actions of the mortgage servicer will undermine the important governmental purpose." (Plaintiff's Amended Memorandum of Law In Support of Plaintiff's Motion for Summary Judgment, p. 8.) Assuming arguendo that the plaintiff is a federal instrumentality for the purposes of the principle established by Merrill, (see12 U.S.C. § 1717 et seq.), the plaintiff's argument attempts to expand Merrill far beyond its actual holding. The holding of Merrill must be examined "so as not to extend [its] rule further than its rationale warrants." Molton, Allen and Williams, Inc. v. Harris, 613 F.2d 1176,1178 (D.C. Cir. 1980).
The defendants' counterclaims against the plaintiff are not based on a claim that because they relied on misrepresentations made by a government agent, the government should be precluded from repudiating the damages caused by this reliance. The defendants are claiming that the plaintiff or its agents violated the terms of the parties' agreement, and did so in a manner that was also tortious and violative of CUPTA. In short, the defendants' claims do not in any way involve the estoppel doctrine.
According to FNMA, Merrill stands for the proposition that the federal government cannot be held liable for the acts of its agents that are outside the scope of their authority and inconsistent with federal law. CT Page 5785 In a very narrow sense, in the context of an equitable estoppel situation, the language of Merrill supports such a position: if federal law establishes the conditions for the distribution of federal funds, the public fisc cannot be invaded by misrepresentations by government agents that are contrary to these legally imposed conditions. However, the plaintiff's broader construction of Merrill is both circuitous and inaccurate. The argument is circuitous because obviously if an agent acts within both the scope of his authority and federal law, there would rarely be a basis for any complaint, but this approach misses the point. An agent or employee of the government is rarely "authorized" to breach a government contract or violate agency rules or procedures. Certainly, FNMA's servicer had the authority to service the loan, demand payment of the debt, accelerate the debt upon default and institute foreclosure procedures to recover any amounts owed. The issue raised by the defendants' counterclaim is whether the plaintiff or its agent exercised this authority in a way that violated the defendants' legal rights.
The applicable Supreme Court decisions since Merrill have not embraced any interpretation of Merrill beyond the context of its actual holding and so do not support the broad construction of the case advanced by the plaintiff. See OPM v. Richmond, 496 U.S. 414, 110 S.Ct. 2465,110 L.Ed.2d 387 (1990); Schweiker v. Hansen, 450 U.S. 785, 101 S.Ct. 1468,67 L.Ed.2d 685 (1981).
In Schweiker v. Hansen, the Supreme Court held that misinformation from a government employee cannot estop the government from complying with regulations governing the distribution of welfare benefits and distributing these benefits in a manner consistent with the regulatory mandate. The Court explained that Merrill recognized "`the duty of all courts to observe the conditions defined by Congress for charging the public treasury.'" Schweiker v. Hansen, supra, 450 U.S. 788, quotingFederal Crop Ins. Corp. v. Merrill, supra, 332 U.S. 385.
The Supreme Court reemphasized this point most recently in OPM v.Richmond, supra. The plaintiff in OPM v. Richmond sought advice from a government personnel officer about the amount of money he could earn without jeopardizing his continued receipt of disability annuity benefits. The personnel officer gave the plaintiff erroneous advice and, as a result, the plaintiff lost six months of benefits. The Court of Appeals held that, because of the misinformation, the government was estopped from denying the benefits. In reversing the Court of Appeals, the Supreme Court held that the plaintiff could not rely on equitable estoppel to acquire money from the public treasury "in direct contravention of the federal statute upon which his ultimate claim to the funds must rest." OPM v. Richmond, supra, 496 U.S. 424. The Court buttressed this holding by pointing to the appropriation clause of the CT Page 5786 constitution, article one, § 9, clause 7, which provides that: "No money shall be drawn from the Treasury, but in Consequence of Approiations made by Law." Id.
In the instant case, the plaintiff is not alleging that the defendants are asserting an estoppel claim in order to acquire public funds contrary to the provisions of a federal regulation or statute. Also, the plaintiff is not claiming that sovereign immunity bars the defendants' claims.[1]
Nor is the plaintiff claiming that no legally sufficient principal/agent relationship exists between it and its servicer, Fleet Bank, pursuant to which liability can be imposed upon it under the theory of vicarious liability. In this regard, it must also be emphasized that the Merrill
doctrine is not limited to third parties who act as agents of federal agencies, but also extends to misrepresentations made by government employees themselves. OPM v. Richmond, supra, 496 U.S. 414. Thus, FNMA's argument would effectively mean that people acting on behalf of the government could violate contractual rights or common law duties with impunity to the extent that no government liability could attach. Such a broad proposition may emanate from principles of sovereign immunity, but it certainly does not follow from anything said by the Supreme Court inMerrill regarding equitable estoppel. In short, the plaintiff cannot hide behind a tortured construction of Merrill to shield itself from being held responsible for violating the contracts it makes or the regulations it promulgates. See generally Schism v. United States, 239 F.3d 1280
(Fed. Cir. 2001) (holding that an agency may be held responsible for violating its own regulations notwithstanding Merrill).
In support of its motion for summary judgment, the plaintiff also heavily relies on a case in the Seventh Circuit, Mendrala v. CrownMortgage Co., 955 F.2d 1132 (7th Cir. 1992). Mendrala, however, is distinguishable. Mendrala, in fact involved an estoppel claim against a federal agency wherein the agency successfully argued that the mortgage servicer who committed the wrongful acts was an independent contractor and not an agent or assignee of the agency. Id., 1140-42. FNMA also relies on other federal district court cases to support its interpretation and application of Merrill. This court disagrees with the reasoning employed in those cases and respectfully declines to follow them. See Paslowski v. Standard Mortgage Corp. of Georgia,129 F. Sup.2d 793 (W.D.Pa. 2000); Deerman v. Federal Home Loan MortgageCorp., 955 F. Sup. 1393 (N.D.Ala. 1997), aff'd, 140 F.3d 1043 (11th Cir. 1998).
 CONCLUSION
Therefore, for all the foregoing reasons, the plaintiff's motion for summary judgment is hereby denied. CT Page 5787
So ordered this 6th day of May 2002.
STEVENS, J.