**Arthur Edward SHEEHAN,
Plaintiff-Appellant,**

v.

**ARMY AND AIR FORCE EXCHANGE SERVICE, An Instrumentality of the Departments of the Army and of the Air Force, Defendant-Appellee.**

**No. 79–1471.**

United States Court of Appeals,
Fifth Circuit.

June 27, 1980.

Ira E. Tobolowsky, Irwin Lightstone, Dallas, Tex., for plaintiff-appellant.

Stafford Hutchinson, Asst. U. S. Atty., Dallas, Tex., Thomas W. Petersen, Wm. Kanter, Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GOLDBERG, GARZA and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

The sole issue on this appeal is whether the district court has been vested with sub-ject matter jurisdiction to adjudicate a suit filed by Arthur Sheehan against the Army and Air Force Exchange Service ("AAFES") based upon wrongful discharge from employment. The lower court dismissed for want of subject matter jurisdiction. We reverse and remand because we are persuaded that the lower court did not lack jurisdiction.

## I. The Facts and Procedural Posture

On March 16, 1976, Sheehan was an employee of the AAFES serving as Shopping Center Manager for the Fort Jackson Exchange in South Carolina. On that date, he received advance written notice of separation based upon conduct off the job that allegedly reflected discredit on the AAFES and that rendered his retention incompatible with the best interests of the AAFES. The letter was signed by James Stapleton, General Manager of the Piedmont Area Exchange, but since Sheehan was then serving in a special program identified as the Executive Management Program ("EMP"),[1] prior approval for the dismissal was obtained from the Commander of the AAFES, General Hospelhorn.[2] Sheehan's written re-

---

1. The EMP is intended to fulfill the continuing requirements of the AAFES for highly qualified and dedicated executive employees who will be readily available to meet the worldwide executive personnel requirements of the AAFES. EMP employees incur special obligations and enjoy specific benefits not available to non-EMP employees of the AAFES. Army Reg. 60–21/Air Force Reg. 147–15 ("AR 60–21/AFR 147–15"), c. 5, § II, ¶¶ 5–6, 5–9 (Nov. 12, 1974). One of the benefits enjoyed is longer notice periods, based upon length of service, in the case of certain separations. *Id.* at ¶ 5–9; Appendix.

2. The regulations regarding authority to dismiss an EMP employee for cause are cumbrous, and are not the model of clarity. Exchange Service Bulletin ("ESB") No. 247 (July 2, 1975) ¶ 13 provides, in pertinent part:
   An employee may be separated for cause by the official with authority to separate the employee [AR 60–21/AFR 147–15 Section II, Chapter 1]. . . .
   Chapter 1, Section II of AR 60–21/AFR 147–15 grants express authority to separate AAFES employees only on the basis of retirement, and this power is granted to the Commander of the AAFES. AR 60–21/AFR 147–14, c. 1, § II, ¶ 1–9e. However, the Commander is also vested with the authority to develop personnel policies, *id.* at ¶ 1–9b, to administer the EMP program, *id.* at ¶ 1–9c, and to administer the AAFES program worldwide, *id.* at ¶ 1–9d. Presumably, these powers include dominion over the discharge of EMP employees of the AAFES. This interpretation is reinforced by the definitional section of ESB No. 247. Paragraph 7n of that Bulletin provides, in relevant part:
   n. Management official: Except as provided below, the management official is the official with authority to separate at the AAFES organizational element . . . to which the employee is assigned.
   (1) If the employee is an EMP employee . . . who is . . . separated by the Commander, AAFES, the management official is the Commander AAFES.
   The Commander is likewise empowered to redelegate his authority in writing. AR 60–21/AFR 147–14, c. 1, § II, ¶ 1–10.
   A redelegation of power to dismiss EMP employees had apparently already been authorized because ¶ 7c(3) of ESB No. 176 (July 29, 1974), which was signed on behalf of the Commander, provides, in pertinent part:

sponse to the March 16, 1976 letter proved ineffective and Stapelton signed a letter of final termination dated April 16, 1976. Sheehan pursued administrative appeal[3] and convinced the hearing examiner that his conduct had not reflected discredit on the AAFES and that his retention was not contrary to the best interests of the AAFES. However, the Commander of the AAFES, General Hospelhorn, acting in the capacity of Appellate Authority, disagreed with the hearing examiner and denied the appeal. He informed Sheehan that the decision was final and was not subject to further appeal or review. In January of 1978, Sheehan petitioned for reconsideration, but this effort eventually proved barren when the Chairman of the Board of the AAFES denied his appeal.

Relief was sought in the district court. The complaint alleged that Sheehan had been denied a free and impartial appeal, because General Hospelhorn gave prior approval for the discharge and also served as Appellate Authority in deciding Sheehan's administrative appeal, in derogation of AAFES regulations[4] and procedural due process. General Hospelhorn's decision in denying the appeal was also assailed as arbitrary, capricious, unsupported by substantial evidence, an abuse of discretion, in excess of statutory authority, and contrary to Sheehan's constitutional rights. Sheehan's prayer for relief sought reinstatement; back pay; other concomitants of employment, including accrued vacation time, sick leave, and retirement benefits; expenses incurred in seeking alternative employment; damages for mental anguish; punitive damages; court costs; and attorney fees.

The district court ruled that it lacked subject matter jurisdiction and granted the AAFES' motion to dismiss. On appeal, Sheehan argues that the court had jurisdiction under 28 U.S.C. §§ 1331(a), 1346(a)(2), and 1361 (1976). For the reasons stated below, we think the court possessed subject matter jurisdiction.

## II. *The Jurisdictional Problem*

■ Subject matter jurisdiction in the federal courts ordinarily involves an examination of the constitutional limitations in Article III and congressional statutory grants of power. When suit is brought against the federal government, however, sovereign immunity, unless waived, operates as a bar to the action in the nature of an additional limitation on the court's subject matter jurisdiction. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. Sherwood*, 312 U.S. 584, 587–88, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941). A suit against the AAFES is considered a suit against the United States because this nonappropriated fund instrumentality[5] is an "arm[ ] of the government deemed by it essential for the performance of govern-

Proposed involuntary separations of all Executive Management Program (EMP) employees . . . that are not initiated by the Commander, AAFES, will be subject to the *prior approval* of the Commander, AAFES . . . . (emphasis in original)
The necessity for obtaining the prior approval of the Commander of the AAFES, for involuntary dismissals of EMP employees when the discharge was not initiated by him, was reaffirmed less than a month after Sheehan received his letter of final termination. ESB No. 299 ¶ 8c(3) (May 10, 1976).

3. ESB No. 247 ¶ 86 (July 2, 1975) permits appeal of separations for cause pursuant to ¶¶ 81–98 of that directive.

4. ESB No. 247 ¶ 97a (July 2, 1975) provides that, ordinarily, the Commander of the AAFES is to serve as Appellate Authority. However, when he is the management official, *see* note 2,

*supra*, the Appellate Authority is to be the Chairman of the Board of Directors, Army and Air Force Exchange and Motion Picture Services.

5. A nonappropriated fund instrumentality is one that does not receive its monies by congressional appropriation. *United States v. Hopkins*, 427 U.S. 123, 125 n.2, 96 S.Ct. 2508, 2510, 49 L.Ed.2d 361 (1976). The AAFES was created and is administered under the general authority vested in the Secretaries of the Army and Air Force by 10 U.S.C. §§ 3012 and 8012 (1976). Absent special legislation, however, the federal government does not assume the obligations of the exchange services in the manner that contracts entered into by appropriated fund agencies are assumed. *Hopkins*, 427 U.S. at 127, 96 S.Ct. at 2511.

mental functions . . . and partake[s] of whatever immunities it may have under the constitution and federal statutes." *United States v. State Tax Commission of Mississippi*, 421 U.S. 599, 606, 95 S.Ct. 1872, 1877, 44 L.Ed.2d 404 (1975); *see Young v. United States*, 498 F.2d 1211, 1215 (5th Cir. 1974); *cf. Standard Oil Co. of California v. Johnson*, 316 U.S. 481, 485, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611 (1942) (nonappropriated fund post exchanges are arms of the government). Because no constitutional infirmity to the assumption of jurisdiction is implicated here, we turn our attention to statutes which bestow subject matter jurisdiction in the traditional sense and those that waive sovereign immunity.

III. *The Tucker Act*

■ 28 U.S.C. § 1346(a)(2) [6] confers subject matter jurisdiction on the district courts in civil actions against the United States, where the amount claimed does not exceed $10,000,[7] and that, *inter alia*, are founded upon an express or implied contract with the federal government. The 1970 amendment to this statute provides that for purposes of the statute, express or implied contracts with certain nonappropriated fund instrumentalities, including the AAFES, are considered to be express or implied contracts with the United States. This section also operates as a waiver of sovereign immunity for the enumerated genre of suits. *A. L. Rowan & Son, General Contractors, Inc. v. Department of Housing and Urban Development*, 611 F.2d 997, 999 (5th Cir. 1980).

Sheehan argues that an implied contract of employment existed between the AAFES and himself. The AAFES counters with the argument that governing regulations [8] establish beyond cavil that he served as an appointed employee and did not toil pursuant to contract. We note that although the complaint does not, by its terms, refer to an implied contract, it does charge that the administrative appellate procedure afforded Sheehan, subsequent to his discharge, did not comport with applicable regulations.

■ Even if the regulations label the *commencement* of Sheehan's employment as pursuant to "appointment," we do not think that ends the inquiry. Other regulations provide that an AAFES employee

---

6. That section provides, in pertinent part:
   (a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
   (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. . . . For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

7. Actions seeking more than $10,000 in damages lie within the exclusive jurisdiction of the Court of Claims. *A. L. Rowan & Son, General Contractors, Inc. v. Department of Housing and Urban Development*, 611 F.2d 997, 999 (5th Cir. 1980); *Jones v. Alexander*, 609 F.2d 778, 780 (5th Cir. 1980). Although Sheehan did not limit his prayer for monetary relief to $10,000, during oral argument his counsel moved to

amend the complaint and to waive any request for relief in excess of that sum. No objection was entered on behalf of the AAFES.
   Although a complaint is fatally defective unless it contains a proper allegation limiting recovery sought, *see Schlesinger v. Councilman*, 420 U.S. 738, 744 n.9, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591 (1975), defective allegations of jurisdiction may be amended on appeal. 28 U.S.C. § 1653 (1976). We have said that this statute is to be liberally construed. *McGovern v. American Air Lines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975) (per curiam); *accord Miller v. Davis*, 507 F.2d 308, 311 (6th Cir. 1974). Permitting amendment at this stage merely avoids a perfunctory refiling of another complaint which limits the request for monetary relief to $10,000. Time and expense for the parties and labor for court personnel are minimized. *See Mathews v. Diaz*, 426 U.S. 67, 75 & n.9, 96 S.Ct. 1883, 1889, 48 L.Ed.2d 478 (1976); *Schlesinger*, 420 U.S. at 744 n.9, 95 S.Ct. at 1306; *Willingham v. Morgan*, 395 U.S. 402, 407–08 & n.3, 89 S.Ct. 1813, 1816–1817, 23 L.Ed.2d 396 (1969); *Jones*, 609 F.2d at 780–81 (uncontested amendment to complaint under Tucker Act permitted on appeal).

8. The AAFES points to AR 60–21/AFR 147–15, c. 2, § I; c. 5, § II (Nov. 12, 1974).

may be separated for cause only under certain conditions and provide for administrative appeal from the separation decision.[9] These latter regulations manifest the understanding of the parties concerning discharge procedures while Sheehan *continued* in AAFES employment. Accordingly, the regulations were part of a collateral implied in-fact contract between Sheehan and the AAFES that the AAFES would adhere to the regulations in its dealings with him. *See Aycock-Lindsey Corp. v. United States,* 171 F.2d 518, 520–21 (5th Cir. 1948); *cf. Bodek v. Department of Treasury,* 532 F.2d 277, 279 n.7 (2d Cir.) (per curiam), *cert. denied,* 429 U.S. 849, 97 S.Ct. 137, 50 L.Ed.2d 122 (1976) (validly enacted regulations are implied part of an express contract). A contract implied-in-fact is one "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of their surrounding circumstances, their tacit understanding." *Porter v. United States,* 496 F.2d 583, 590, 204 Ct.Cl. 355 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975). That understanding was reinforced by the well-established legal principle that a federal agency is bound to follow its regulations where the rights of individuals are affected. *E. g. Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); *Vitarelli v. Seaton,* 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–73, 3 L.Ed.2d 1012 (1959).

■ The allegation that the discharge violated controlling regulations was, there-fore, equivalent to an allegation of breach of an implied-in-fact contract. Such a claim is sufficient to avoid dismissal on jurisdictional grounds. *United States v. Hopkins,* 427 U.S. 123, 130, 96 S.Ct. 2508, 2512, 49 L.Ed.2d 361 (1976). Accordingly, the lower court should not have dismissed the suit; it had power to hear the dispute and to award monetary relief pursuant to section 1346(a)(2).

■ Section 1346(a)(2) does not, however, confer subject matter jurisdiction on the district court to award nonmonetary cure. *E. g., Lee v. Thornton,* 420 U.S. 139, 95 S.Ct. 853, 43 L.Ed.2d 85 (1975); *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir. 1980).[10] The source of that power must be found in other statutes.

### IV. *General Federal Question Jurisdiction*

■ 28 U.S.C. § 1331(a) (1976)[11] confers subject matter jurisdiction on the district courts for actions which arise under the Constitution and laws of the United States. Ordinarily, at least $10,000 must be at stake, but after the 1976 amendment to this statute, the monetary limitation does not pertain to suits against an agency of the federal government. Although the complaint did not specify this provision as a basis of jurisdiction, if the facts alleged meet the limitations, the lower court had jurisdiction notwithstanding the omission. *Andrus v. Charlestone Stone Products Co.,* 436 U.S. 604, 607, 98 S.Ct. 2002, 2005 n.6, 56 L.Ed.2d 570 (1978); *Schlesinger v. Councilman,* 420 U.S. 738, 744 n.9, 95 S.Ct. 1300, 1306, 43 L.Ed.2d 591 (1975).

---

**9.** ESB No. 247 ¶¶ 13, 27, 81–98 (July 2, 1975).

**10.** Some circuit courts have intimated that the district courts may have jurisdiction under section 1346(a)(2) to award equitable relief in the narrow circumstance where it is merely incidental to and in aid of a primary request for monetary succor. *Werner v. United States Department of Interior, Fish and Wildlife Service,* 581 F.2d 168, 171 (8th Cir. 1978); *Larionoff v. United States,* 533 F.2d 1167, 1181 (D.C.Cir. 1976); *aff'd* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). Assuming *arguendo* that such an exception does obtain, it is inapplicable because the principal relief sought here is reinstatement and restoration of employment bene-fits. It cannot be said that the nonmonetary remedy is merely incidental to or in aid of Sheehan's claim for monetary relief.

**11.** That section provides:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

■ Sheehan's complaint alleged procedural due process violations, arbitrary and capricious action constituting an abuse of discretion (presumably in contravention of substantive due process), and that Hospelhorn's denial of the appeal infringed other constitutional and statutory protections. The charge that appellate review by Hospelhorn violated governing regulations also arises under the "laws" of the United States. *Chasse v. Chasen,* 595 F.2d 59, 61 (1st Cir. 1979); *Spencer v. Laird,* 442 F.2d 904, 906 (2d Cir. 1971); *Farmer v. Philadelphia Electric Co.,* 329 F.2d 3, 7–8 (3d Cir. 1964). Federal question jurisdiction under section 1331(a) is triggered by these allegations because they are not *"so patently without merit* as to justify . . . the court's dismissal for want of jurisdiction." *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 70, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978), *quoting, Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–82, 39 L.Ed.2d 577 (1974) (emphasis in the original).

Nevertheless, section 1331(a) is not a waiver of sovereign immunity. *Beale v. Blount,* 461 F.2d 1133, 1138 (5th Cir. 1972). Sheehan must look to 5 U.S.C. § 702 (1976)[12] for the waiver. The 1976 amendment to that statute waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.

■ We are cognizant of the fact that the Second Circuit has recently held that section 702 does not waive the bar of sovereign immunity for nonstatutory review of agency action under section 1331. *Estate of Watson v. Blumenthal,* 586 F.2d 925, 932 (2d Cir. 1978). Nevertheless, we find the illumination of the legislative history of section 702 by the Third Circuit in *Jaffee v. United States,* 592 F.2d 712, 718–19 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979), cogent. We too must respectfully part with the Second Circuit and hold that Congress did intend to waive the defense of sovereign immunity for nonstatutory review under section 1331. *Accord, Collyard v. Washington Capitals,* 477 F.Supp. 1247, 1252–53 (D.Minn.1979).

■ However, the AAFES argues that the 1970 amendment to 28 U.S.C. § 1346 (1976), which provided that express or implied contracts with the AAFES are to be considered as contracts with the United States, impliedly prohibits jurisdiction under 28 U.S.C. § 1331(a) (1976) and 5 U.S.C. § 702 (1976). It argues that in enacting that amendment, Congress believed that it was extending the sole vehicle for suit against the AAFES. Reliance is then placed on *Brown v. General Services Administration,* 425 U.S. 820, 828–29, 96 S.Ct. 1961, 1965–66, 48 L.Ed.2d 402 (1976), and other cases, for the proposition that this belief, even if erroneous, impliedly prohibits relief under clause (2) in section 702.

We do not find this argument persuasive. The AAFES has not pointed us to any authority that indicates that Congress' purpose in enacting the 1970 amendment was to provide the only method for suing the AAFES. Indeed, *Hopkins,* 427 U.S. at 125, 96 S.Ct. at 2510, states that the purpose was to clarify that the fact that the government has not assumed the obligations of the enu-

---

**12.** That section provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

merated nonappropriated fund instrumentalities does not prevent suit against them from being suits against the United States. Thus, after *Hopkins* it was clear that actions for breaches of contract seeking monetary relief were to be cognizable in the Court of Claims (and in the district courts if the sum involved did not exceed $10,000). But, we have no indicia of congressional belief regarding the maintainability of suits against AAFES for *nonmonetary* relief at the time the amendment was before Congress. Consequently, we do not find the enactment to be preclusive under a *Brown* syllogism.

■■■ It is clear that the legislative history to section 702 indicates that Congress did not intend to expand the waiver of sovereign immunity in the Tucker Act.[13] When suit is premised solely on that Act, section 702 cannot expand the jurisdiction and waiver under 28 U.S.C. § 1346(a)(2) to permit the award of nonmonetary relief in the district court. Conversely, when suit is brought under statutes other than the

Tucker Act seeking a nonmonetary remedy for violation of the national Constitution and laws, the limited grant of jurisdiction and waiver of sovereign immunity found in that Act does not expressly or impliedly prohibit the suit. *See Neal v. Secretary of Navy*, 472 F.Supp. 763, 773–75 (E.D.Pa. 1979).[14] In this instance, nonmonetary relief is available under a jurisdictional grant in 28 U.S.C. § 1331(a), and that statute is not a waiver of sovereign immunity and contains no express or implied interdiction against nonmonetary relief.

## V. *Mandamus*

■■■ 28 U.S.C. § 1361 (1976)[15] confers subject matter jurisdiction for actions in the nature of mandamus to compel a federal agency to perform a duty owed to the plaintiff. The statute is also a waiver of sovereign immunity. *Huffstutler v. Bergland*, 607 F.2d 1090, 1092 (5th Cir. 1979) (per curiam); *Beale*, 461 F.2d at 1138.

■■■ Three elements must exist, however, before mandamus is appropriately ex-

13. H.R.Rep. No. 1656, 94th Cong., 2 Sess. 12–13, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6121, 6133 indicates that:

Likewise, the amendment to 5 U.S.C. section 702 is not intended to permit suit in circumstances where statutes forbid or limit the relief sought. Clause (2) of the third new sentence added to section 702 contains a second proviso concerned with situations in which Congress has consented to suit and the remedy provided is intended to be the exclusive remedy. For example, in the Court of Claims Act, Congress created a damage remedy for contract claims with jurisdiction limited to the Court of Claims except in suits for less than $10,000. The measure is intended to foreclose specific performance of government contracts. In the terms of the proviso, a statute granting consent to suit, *i. e.*, the Tucker Act, "impliedly forbids" relief other than the remedy provided by the Act. Thus, the partial abolition of sovereign immunity brought about by this bill does not change existing limitations on specific relief, if any, derived from statutes dealing with such matters as government contracts, as well as patent infringement, tort claims, and tax claims. (footnotes omitted).

14. *Lee v. Blumenthal*, 588 F.2d 1281 (9th Cir. 1979) and *Estate of Watson v. Blumenthal*, 586 F.2d 925, 932–34 (2d Cir. 1978) may conflict, to a certain extent, with this view. Those cases involved suits seeking to compel the government to redeem "Flower Bonds." However,

the value at stake in both those cases far exceeded the $10,000 limitation on jurisdiction in the district courts under § 1346(a)(2). A suit seeking a judgment for damages for breach of the bond contract, which would have been functionally equivalent to a judgment ordering redemption, would have to have been brought in the Court of Claims. Exercise of jurisdiction on those facts would have the pernicious effect of undermining the exclusive jurisdiction of the Court of Claims. *Cf. Carter v. Seamans*, 411 F.2d 767, 774–75 (5th Cir. 1969), *cert. denied* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). (declining to exercise mandamus jurisdiction so as not to interfere with the exclusive jurisdiction of the Court of Claims). In fact, in *Lee*, one of the reasons articulated for the reluctance "to accept this action as pleaded" was the equivalence of the remedies of damages and an order to redeem.

15. That section provides:

The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

That this section cannot serve as a jurisdictional basis for Sheehan's unliquidated monetary claim is evident from *Spaulding v. Nielsen*, 599 F.2d 728, 730 (5th Cir. 1979) (per curiam).

ercised: (1) the plaintiff must have a clear right to the relief, (2) the defendant must have a clear duty to act, and (3) no other adequate remedy must be available. *Jones,* 609 F.2d at 781; *Winningham v. United States Department of Housing and Urban Development,* 512 F.2d 617, 620 (5th Cir. 1975). With regard to this final factor, the alternative remedy must be capable of affording full relief as to the subject matter in question. *Carter v. Seamans,* 411 F.2d 767, 773 (5th Cir. 1969), *cert. denied,* 397 U.S. 941, 90 S.Ct. 953, 25 L.Ed.2d 121 (1970). Since we hold that Sheehan can maintain his suit for both monetary and nonmonetary relief under alternative statutes, the lower court did not possess mandamus jurisdiction.

VI. *Summary*

We have concluded that the district court possesses subject matter jurisdiction to decide this controversy. Power to provide monetary relief is found in the Tucker Act, 28 U.S.C. § 1346(a)(2), and authority to award nonmonetary compensation flows from the confluence of 28 U.S.C. § 1331(a) and 5 U.S.C. § 702. This holding precludes the existence of mandamus jurisdiction in the district court. We travel no further and should not be understood to intimate any opinion on the merits.

REVERSED and REMANDED.