AUGUSTA AVIATION, INC.,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 81–7029.

United States Court of Appeals,
Eleventh Circuit.

March 22, 1982.

---

Robert S. Greenspan, Atty., Civ. Div., Frederick Geilfuss Dept. of Justice, Washington, D. C., for defendant-appellant.

Edward E. Boshears, Brunswick, Ga., for plaintiff-appellee.

Before THORNBERRY,* FAY and HATCHETT, Circuit Judges.

THORNBERRY, Circuit Judge:

This case turns on a single issue: whether a valid implied-in-fact contract exists between the Veterans Administration (VA) of the United States and Augusta Aviation, Inc., for training received by veteran Joe D. Brown pursuant to an educational assistance program that was created to assist veterans in returning to civilian life. *See* Veterans Readjustment Act, 38 U.S.C. § 1651, et seq.

Augusta Aviation has offered its approved flight training courses in compliance with the VA program since 1967. In June, 1977, Joe Brown sought enrollment in a Roto-Craft-Helicopter, Commercial Airplane to Commercial Helicopter Course. He completed VA Form 22–1995 to become eligible for educational assistance. 38 U.S.C. § 1671. In accordance with its standard procedures, Augusta Aviation sent Brown's application to the VA along with a letter stating that it would enroll Brown when it received a Certificate of Eligibility as proof that Brown would qualify for government assistance to help him pay for the course. On July 18, 1977, the VA sent the certificate to Brown. Brown then submitted it to Augusta. Augusta claims that it would not have accepted Brown without the Certificate of Eligibility. The certificate showed that Brown was entitled to thirty and one-half months of entitlement to educational assistance. The number of months of entitlement allotted to a veteran depends upon the length of time served in the armed forces. 38 U.S.C. § 1677(b).

Brown enrolled in the helicopter course and received training from July 27, 1977 to August 30, 1977. The total cost of his training was $7,041.00. According to the certificate, the VA would pay $6,336.99, and Brown would pay the remaining ten percent of the total cost. After Brown completed the course, however, the VA realized it had made a mistake in computing Brown's months of entitlement. It discovered that Brown was eligible for four months of entitlement, rather than the promised thirty and one-half months. Thus, the VA paid Brown $1,045.36 for educational assistance instead of $6,336.99. Brown gave the $1,045.36 to Augusta plus his ten percent of the original total. Augusta then sent statements to Brown requesting payment of the remaining cost. Brown never paid the $5,291.63 difference between the original assessment of entitlement and the revised estimation, and Augusta never sued him to recover it. Instead, Augusta sued the United States.

Augusta claims that it relied to its detriment on the VA's negligent computation. It does not rest its right to recover on tort theory, however. Augusta argues that an implied-in-fact contract exists between itself and the United States, which gives it the right to the cost of Brown's training. The district court accepted Augusta's position. It found that the VA implicitly invited Augusta to offer training to Brown in exchange for the VA's implied agreement to pay ninety percent of the cost of his training. The VA, it concluded, benefits from the arrangement by having schools available to provide approved educational programs to veterans. Furthermore, the VA imposes numerous rules and regulations

---

* Honorable Homer Thornberry, Circuit Judge for the U. S. Court of Appeals for the Fifth Circuit, sitting by designation.

on participating schools. When schools comply with the regulations, the district court reasoned, they "accept" the VA's "offer." Rejecting the VA's unilateral mistake as a basis for relief from its implied obligation, the district court entered judgment for $5,291.63 against the United States.

We reverse the district court's judgment and hold that even if an implied-in-fact contract to pay the erroneous assessment arose, it is void for lack of statutory authorization.

## I. JURISDICTION

The government first raises the issue of whether the district court, 500 F.Supp. 785, had jurisdiction to hear Augusta's claim. Augusta based its complaint on the Tucker Act, 28 U.S.C. § 1346(a)(2), which permits civil actions against the Federal government founded upon "any express or implied contract with the United States." The government argues that the district court had no jurisdiction since the "contract" was implied in law, if at all, rather than implied in fact. *See Hatzlachh Supply Co., Inc. v. United States*, 444 U.S. 460, 465 n.5, 100 S.Ct. 647, 650 n.5, 62 L.Ed.2d 614 (1980).

We find this reasoning circular. It is the allegations which support jurisdiction, not their merit in the final analysis. *United States v. Hopkins*, 427 U.S. 123, 131, 96 S.Ct. 2508, 2512, 49 L.Ed.2d 361 (1976); *Sheehan v. Army & Air Force Exchange Service*, 619 F.2d 1132, 1138 (5th Cir. 1980), *cert. granted*, —— U.S. ——, 102 S.Ct. 88, 70 L.Ed.2d 81 (1981). *Sheehan* involved an alleged implied-in-fact employment contract. The district court dismissed for lack of jurisdiction. Finding the dismissal erroneous, we held: "The allegation that the discharge violated controlling regulations was, therefore, equivalent to an allegation of breach of an implied-in-fact contract. Such a claim is sufficient to avoid dismissal on jurisdictional grounds." *Id.*

█ The district court, therefore, properly exercised jurisdiction. It need not reach the merits to decide that no implied-in-fact contract exists and, then, dismiss for lack of jurisdiction. An opposite conclusion, as pressed by the government, would be contrary to law and common sense.

## II. STANDARD OF REVIEW

█ The government urges us to treat the question of whether a contract exists as a matter of fact, which we can set aside only upon finding that the district court's determination was clearly erroneous. This proposition fails to recognize the difference between subsidiary facts and ultimate facts.

As a general rule, under Fed.R.Civ.P. 52(a), this court is bound to apply the clearly erroneous standard in reviewing the district court's factual determinations. We accord the district court a wider latitude in this field because factual determinations typically rest on an assessment of the demeanor and credibility of witnesses who are present for the trial judge to observe. The ability of the trial judge to test the veracity of evidence is crucial to the determination of subsidiary facts because they constitute the primary evidence in the case from which ultimate facts are drawn. *United States for the Use and Benefit of General Electric Supply Co. v. Wiring, Inc.*, 646 F.2d 1037, 1041 (5th Cir. 1981).

A finding that a contract exists between the United States and Augusta is the ultimate fact, or legal conclusion, in this lawsuit. It is determinative, just as a finding of discrimination is conclusive in a Title VII case. *See Danner v. United States Civil Service Commission*, 635 F.2d 427, 430–31 (5th Cir. 1981); *Helash v. Ballard*, 638 F.2d 74, 75 (9th Cir. 1980). In drawing conclusions from subsidiary facts the ability of the trial court to apply the law properly becomes more significant than its peculiar advantage in judging the weight of the evidence. Thus, it is logical for the reviewing court to treat ultimate facts as matters of law that it may determine independently.

The Supreme Court recognized the distinction between ultimate facts and subsidiary facts when it addressed a contract dispute in *United States v. Mississippi Valley*

*Generating Co.,* 364 U.S. 520, 526, 81 S.Ct. 294, 297, 5 L.Ed.2d 268 (1961). Before reversing the Court of Claims' finding that the government contract was enforceable, the Court stated "our reliance upon the findings of fact [of the Court of Claims] does not preclude us from making an independent determination as to the legal conclusions and inferences which should be drawn from them." *Id. See also United States v. Grayson County State Bank,* 656 F.2d 1070, 1075 (5th Cir. 1981). This approach is particularly sound when the subsidiary facts are undisputed, as they are in this case, and when the judgment turns solely on the application of the law to the facts. *Helash, supra,* 638 F.2d at 75. *See also Weingart v. Allen & O'Hara, Inc.,* 654 F.2d 1096, 1103 (5th Cir. 1981).

When reviewing the district court's finding that a valid contract exists, then, we are guided by its subsidiary findings as to the regulations imposed on Augusta, the amount of money promised and paid by the government, and the sequence of events. We will decide independently, however, whether Augusta holds a contractual right based on these findings against the United States.

### III. IS THERE A VALID IMPLIED–IN–FACT CONTRACT?

▮ The district court found an implied-in-fact contract based on the numerous requirements imposed on Augusta by the VA. We view the issue in a different light and hold that a valid contract to pay for $5,291.63 of Brown's training could not exist between Augusta and the VA because this amount was unauthorized under the Veterans Readjustment Act, 38 U.S.C.

§ 1651 et seq. We do not discuss the presence or absence of the elements essential to creating a valid implied-in-fact contract, *see Atlantic & Gulf Stevedores, Inc. v. Alter Co.,* 617 F.2d 397, 401 (5th Cir. 1980), and *Bloomgarden v. Coyer,* 479 F.2d 201, 208–09 (D.C.Cir.1973),[1] because even if we found the elements of an implied-in-fact contract satisfied in this case, the governing statute would render such an agreement void.

Under section 1661 of the Veteran's Readjustment Act, 38 U.S.C., eligible veterans are entitled to educational assistance for a period of one and one-half months for each month of the veteran's service on active duty. Congress also specifically provided that the Administrator of the Act charge the veteran one month of his earned entitlement for each month of flight training instruction received by the veteran. 38 U.S.C. § 1677(b). The Administrator does not have the power to grant a veteran any more money than the amount permitted by the ratio in the statute. Yet, as everyone involved in this lawsuit admits, the VA made a mistake and assessed more money for Brown than the statute allows.

A similarly unfortunate occurrence was litigated in *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), where the Bonneville County Agricultural Conservation Committee, acting as agent for the Federal Crop Insurance Corporation, erroneously informed the plaintiffs that their reseeded spring wheat was insurable under the Federal Crop Insurance Act. This information, on which plaintiffs relied, was contrary to a provision in the Wheat Crop Insurance regulations, which prohibited coverage of spring wheat that is

---

1. The court in *Bloomgarden, supra,* summarized the requirements for proving an implied-in-fact contract to pay for services: "[T]he party seeking payment must show (1) that the services were carried out under such circumstances as to give the recipient reason to understand (a) that they were performed for him and not for some other person, and (b) that they were not rendered gratuitously, but with the expectation of compensation from the recipient; and (2) that the services were beneficial to the recipient." 479 F.2d at 208–09. The agreement is inferred from the conduct of the parties, or in this case from agency regulations. It should not be confused with an agreement that is implied in law. The latter type of agreement arises when the courts impute a promise to perform a legal duty because justice so requires, regardless of whether mutual intent is present. *See Baltimore & O.R. Co. v. United States,* 261 U.S. 592, 597–98, 43 S.Ct. 425, 426–27, 67 L.Ed. 816 (1923); *Russell Corp. v. United States,* 537 F.2d 474, 482 (Ct.Cl.1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977).

reseeded on winter wheat acreage. The Committee acted in good faith when it advised plaintiffs. It simply was mistaken in believing that reseeded spring wheat was covered, just as the VA was mistaken in its calculation of Brown's entitlement. The Corporation accepted plaintiffs' insurance application, but when drought destroyed the crop and the Corporation realized that the wheat had been reseeded, it refused to compensate plaintiffs for their loss.

Despite the hardship imposed on plaintiffs, the Supreme Court held to a well-settled principle: "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Id.* at 384, 68 S.Ct. at 3. The restrictions on insurable crops were binding on all who sought insurance within the Federal Insurance Act, regardless of either their actual knowledge of the restrictions or the hardship resulting from an innocent mistake by the government. *Id.* Thus, when an agent of the government enters a contract that does not satisfy statutory or regulatory conditions, the courts cannot bind the government to the contract. *See Molton, Allen & Williams, Inc. v. Harris,* 613 F.2d 1176, 1178 (D.C.Cir.1980); *Dresser Industries, Inc. v. United States,* 596 F.2d 1231, 1236–37 (5th Cir. 1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980); *Sims v. Fox,* 505 F.2d 857, 862 (5th Cir. 1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975).[2]

The Supreme Court has recently affirmed the rationale of *Merrill* in *Schweiker v.*

*Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), where it again determined the effect of a mistake by the government. The plaintiff in *Schweiker* sued for retroactive social security benefits, which she missed because a Social Security field representative failed to inform her of the necessity of filing a written application. A written application is a mandatory prerequisite to receipt of benefits. In neglecting to convey this information, the field representative violated clear regulations in the Social Security Claims Manual. The government insisted nevertheless that it could adhere to its requirement of a written application and avoid the claim for lost benefits. The Court agreed. Citing *Merrill,* it re-emphasized the duty of courts to guard the public fisc when Congress has laid out clear restrictions on expenditures: "A court is no more authorized to overlook the valid regulation requiring that applications be in writing than it is to overlook any other valid requirement for the receipt of benefits." 101 S.Ct. at 1471–72. If the rule were otherwise, the government would be put at risk every time its agents failed to follow instructions to the last detail, and their mistakes could impermissibly decrease the public treasury to the detriment of every taxpayer.

The Veterans Readjustment Act explicitly limits a veteran's entitlement. Any promise of benefits beyond this amount creates an excess that Congress did not authorize. Thus, even if we characterize the promised excess as "contractual," it remains void for lack of authorization. The cases upon which Augusta relies pose no conflict with our decision. In *Aycock-Lindsey Corp.*

---

**2.** This court in *Dresser, supra,* declared invalid a grant of immunity by an SEC agent after citing *Merrill* for the rule that "the federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority." 596 F.2d at 1236. The court concluded that since the SEC's agents lacked actual authority to limit contractually the prosecutorial discretion of the Department of Justice, any such agreement with Dresser would be unenforceable. *Id.* at 1237.

In *Sims, supra,* we considered a plaintiff's claim to a property right in continued employment in the Air Force. Though we did not rely on *Merrill,* we adhered to its premise: "[A] contract or regulation cannot grant that which Congress has specifically withheld. The Air Force must act within the authority delegated to it by Congress or, in certain cases, by the President. Any 'regulations' or 'contracts' attempted in excess of that authority would be void." 505 F.2d at 857. *See also Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093, 1097–98 (9th Cir. 1981).

*v. United States*, 171 F.2d 518 (5th Cir. 1948), this court found an implied-in-fact contract based on production regulations promulgated by the Secretary of Agriculture. We noted in reaching this result, however, that the government never contended, nor was it proved, that "the Secretary of Agriculture was not authorized to inaugurate and maintain either the curtailment, or the increased-production, program." *Id.* at 521. Proof of unauthorized acts, then, would have led to a different conclusion. *See also Molton, Allen & Williams, Inc., supra*, 613 F.2d at 1178–79.[3]

For the foregoing reasons we hold that Augusta cannot recover its $5,291.63 loss against the United States. Because the government's miscalculation ultimately may have caused Augusta's loss, our result appears harsh. It is, however, no less unjust than the misrepresentation exception to the Federal Tort Claims Act 28 U.S.C. § 2680(h), which exempts claims of misrepresentation from the government's waiver of sovereign immunity. *See, e.g., Baroni v. United States*, 662 F.2d 287, 289 (5th Cir. 1981). In concluding, we reiterate the Supreme Court's earlier appraisal of our role in cases of this kind: " 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Merrill, supra*, 332 U.S. at 384, 68 S.Ct. at 3.

The judgment of the district court is reversed.

REVERSED.

---

**3.** Augusta also relies on *Sheehan, supra*, to support the existence of a valid contract. We again point out that we do not address the question of whether the elements of a contract are satisfied in this case, for it is basically irrelevant to our reasoning. We note, however, that Augusta's reliance on *Sheehan* is misplaced. *Sheehan* was limited to the sole issue of whether the district court had subject matter jurisdiction. The court did not reach either the merits of Sheehan's contract claim or the authority of the AAFES to enter the terms of the contract as asserted by Sheehan.