**MILENA SHIP MANAGEMENT COMPANY, LTD., et al.**

v.

**R. Richard NEWCOMB, et al.**

**Civ. A. No. 92–2535.**

United States District Court, E.D. Louisiana.

Sept. 23, 1992.

John Harold Clegg, Douglas L. Grund-meyer, Daphne P. McNutt, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiffs.

Nancy Ann Nungesser, U.S. Attorney's Office, New Orleans, La., for defendants.

## ORDER AND REASONS

FELDMAN, District Judge.

Before this Court is the motion of Milena Ship Management Company, Ltd., and the three Maltese shipping companies which it represents, plaintiffs in this action, for the Court to order the defendants to appoint a provisional custodian to maintain and administer four vessels owned or operated by the plaintiffs which are the subject of a blocking order issued pursuant to the International Emergency Economic Powers Act.[1] For the reasons that follow, the mo-

---

1. The other named plaintiffs which, at least nominally, own the blocked vessels are South Cross Shipping Ltd., South Adriatic Bulk Shipping Limited, and Gulf & Eastern Steamship and Chartering Corp.

tion is denied. Although the facts have been recited in a prior opinion denying the plaintiff's motion for a preliminary injunction, they will be repeated to keep the issues in perspective.

### BACKGROUND

Against the background of hostilities occurring in the strife torn republic once known as Yugoslavia and the resolutions of the United Nations imposing economic sanctions on the Federal Republic of Yugoslavia (Serbia and Montenegro), President Bush issued two executive orders imposing economic sanctions on that government. In Executive Order 12808, the President blocked

> all property and interests in property in the name of the Government of the Socialist Federal Republic of Yugoslavia or the Government of the Federal Republic of Yugoslavia that are in the United States, that, hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons.

Executive Order 12810 prohibited all imports to the United States from Yugoslavia and all exports from the United States to Yugoslavia.

In early July, the Office of Foreign Assets Control (OFAC) issued a notification that "[a]ll entities located or organized in Serbia and Montenegro, and their foreign subsidiaries, are presumed to be owned or controlled by the Government of Yugoslavia." This same document announced that "all assets within U.S. jurisdiction owned or controlled by these entities are to be treated as blocked." The list of blocked Yugoslavian companies in this notice included Jugoslovanska Oceanska Plovidba (JOP).

Pursuant to this order, the U.S. Customs Service has blocked vessels in the Port of New Orleans (the M/V Zeta and the M/V Moslavina) and the Ports of Savannah and Baltimore (the M/V Kapetan Martinovic and the M/V Durmitor) as well as blocking some bank accounts relating to JOP.

The plaintiffs maintain that the blocking order is improper because all these vessels fly the flag of Malta, and all are owned and operated by Maltese companies (recently formed in May 1992). They say that plaintiff South Cross Shipping, Ltd. owns the Zeta and the Durmitor and plaintiff South Adriatic Bulk Shipping, Ltd. owns the Moslavina and the Kapetan Martinovic. All of the vessels are managed and operated by the plaintiff Milena Ship Management Co. of Malta.

JOP, an old and established company, is, however, the parent to each of the recently formed Maltese companies that currently, at least nominally, own and manage the vessels. OFAC's blocking order is based upon its conclusion that the Maltese companies are "foreign subsidiaries" of JOP so that they, like JOP (a Yugoslavian company) are presumed to be owned or controlled by the Yugoslavian government. The plaintiffs deny this claim, although the head of JOP, until a short time ago, was also the foreign minister of Montenegro.

The plaintiffs have previously sought a preliminary injunction asking this Court to unblock the assets pending a final determination of the validity of the administrative freeze order. This Court denied that motion finding that the plaintiffs had failed to carry their burden of proof on the issue of substantial likelihood of success on the merits, and that the requested preliminary injunction did not serve the public interest.

### I.

The plaintiffs now move for this Court to order the defendants to appoint a provisional custodian to be responsible for the maintenance and care of the four blocked vessels for the duration of this case. In deciding this motion, this Court is mindful of and constrained by the fact that the defendants are officials of the United States government. As a result, the proper procedural model for deciding this motion is the Mandamus Act, 28 U.S.C. § 1361. For the plaintiffs to succeed on their motion they must prove that (1) their claim for relief is clear and certain; (2) that the defendants have a duty which is ministerial and so plainly prescribed as to be free from doubt; and (3) no other adequate

remedy is available. *Azurin v. Von Raab*, 803 F.2d 993, 995 (9th Cir.1986). *See also,* *Sheehan v. Army and Air Force Exchange Service*, 619 F.2d 1132, 1141 (5th Cir.1980); *Winningham v. HUD*, 512 F.2d 617, 620 (5th Cir.1975). The plaintiffs have failed to meet this test because no duty exists to provide custodial care for blocked assets under the IEEPA, certainly not one so plainly prescribed as to be free from doubt.

### A.

■ The plaintiffs make two arguments in support of their motion to order the appointment of a provisional custodian. First, they argue that because they have been "completely divested of all control over the movement, operation and management of these vessels, [the blocking] is tantamount to a constructive seizure of these vessels." As such, the plaintiffs argue, the defendants are responsible for the care and maintenance of the vessels. This Court disagrees with both the plaintiffs' characterization of the blocking action and the conclusion that the plaintiffs draw from it. The plaintiffs have not been completely divested of all control over these vessels. In fact, the defendants have indicated a willingness

> to grant plaintiffs licenses to maintain their vessels using funds from blocked accounts, to grant licenses for the sale of the vessels with proceeds to be placed in a blocked account, or to grant the plaintiffs licenses to operate under bare boat charters with the proceeds to be placed in blocked accounts.[2]

That the plaintiffs must proceed with the permission of the defendants merely suggests that the plaintiffs have a more heavily regulated control over their ships under emergency circumstances, but certainly have not been completely divested of control.

Plaintiffs' novel concept of a "constructive seizure" can hardly be drawn from the fact that the Customs Service has refused to permit the vessels to clear for foreign ports. Had these vessels been actually seized by U.S. marshals under the Court's jurisdiction as part of *in rem* proceedings in admiralty, then the United States would have an interim duty of care, but that is not this case. That the blocking order impinges upon how the plaintiffs would choose to utilize their vessels does not elevate the government's administrative act to the status of a seizure, constructive or otherwise. The Customs Service assumes no duty of maintenance or care by refusing to clear these vessels for foreign ports. And no impediments have been placed in the way of the plaintiffs' care of these vessels.

### B.

■ The plaintiffs' second argument is one of statutory construction. The Executive Order at issue in this case was issued under the International Emergency Economic Powers Act, a statute which authorizes the President to regulate international economic transactions and foreign assets in the United States during times of national emergency. 50 U.S.C. § 1701 et seq. It is the plaintiffs' assertion that the IEEPA can only be read in conjunction with its ancestor, the Trading with the Enemy Act (TWEA), which authorizes similar sanctions but is restricted to times of war. 50 U.S.C.App. § 1 et seq. The TWEA is superficially helpful to the plaintiffs because, unlike the IEEPA, it contains a specific provision for an "Alien Property Custodian" authorized to receive all money and property belonging to the enemy, and to hold, administer and account for these assets "under the direction of the President." 50 U.S.C.App. § 6. Because the IEEPA contains no such provision, the plaintiffs suggest that this Court should read the custodial provision of the TWEA normatively into the silence of the IEEPA. While such statutory gymnastics would be convenient for the plaintiffs, this Court should not ignore the plain text of the IEEPA.

---

**2.** Defendants' Memorandum in Opposition to Plaintiffs' Motion to Appoint Provisional Custo-     dian, note 3 p. 5.

Discovering congressional intent in a particular statute can result in a free-floating analysis if the Court allows itself to become untethered from the clarity of the statute itself. Of first importance, however, is the need to "examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990). Here, the statute is silent as to any custodial obligations for blocked vessels on the part of the United States. That is the stark textual contrast of TWEA and IEEPA. To go beyond the IEEPA and extrapolate such obligations from the TWEA would be judicial excess. Congress is presumed to have been aware of the differences between the two acts because so much of the later IEEPA is identical to its predecessor. That it chose not to impose the custodial duties under the IEEPA is a choice that must be respected by this Court. It would certainly be too much for this Court to presume that Congress intended for the courts to read the silence of the IEEPA as really meaning "for custodial duties for blocked assets see the Trading with the Enemy Act."

## II.

 If a custodial duty cannot be implied under the IEEPA from the existence of such a duty under the TWEA, nor can it be implied from the fact, as plaintiffs suggest, that OFAC directed financial institutions to place blocked funds of Yugoslavia in interest bearing accounts. The plaintiffs interpret this as an order to the banking institutions "to see that these funds grow instead of diminish" and conclude that the owners of blocked tangible assets are due no less care than those of intangible assets. There is, however, a marked difference between directing a bank to place funds in an interest bearing account and requiring the government to maintain a blocked ship. As the defendants persuasively argue, placing funds in interest bearing accounts does not commit the government to management or maintenance duties, as would be the case with taking physical custody of an asset.

 The plaintiffs' final plea is that policy and equity urge this Court to order the defendant to appoint a provisional custodian. The plaintiffs misunderstand the purpose of the IEEPA and orders issued under it. Plaintiffs would shift the cost of the blocking order to the United States. That would weaken the effect of the IEEPA. The very purpose of Executive Order 12808 is to speak to U.N. sanctions and to impose economic punishment on the government that now calls itself Yugoslavia because of human rights violations in the region that have met with unqualified condemnation in the international community.

In the end, this Court cannot, even as a safeguard against the speculation that plaintiffs might succeed on the merits, order the government to care for the blocked vessels. No statutory or other duty is imposed on the defendants to provide a custodian, and this Court is not the place to create one. The motion is denied.