695 F.2d 390
 PILEDRIVERS' LOCAL UNION NO. 2375, Appellant,
v.
William French SMITH, U.S. Attorney General; Rudolph W.
Giuliani, Associate U.S. Attorney General; and
Alan C. Nelson, Commissioner of the
Immigration and Naturalization
Service, Appellees.
 No. 82-5605.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1982.
Decided Dec. 28, 1982.
 
 1
 John T. DeCarlo, Los Angeles, Cal., for appellant.
 
 
 2
 Ian Fan, Asst. U.S. Atty., Los Angeles, Cal., for appellees.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before ANDERSON and PREGERSON, Circuit Judges, and SOLOMON,* Senior District Judge.
 
 SOLOMON, Senior District Judge:
 
 5
 Piledrivers' Local Union No. 2375 (Union), appellant, filed an action to compel the Attorney General (A.G.) and the Immigration and Naturalization Service (INS), appellees, to enforce the Immigration and Nationality Act[1] (I.N.A.) on the outer continental shelf. The district court, 541 F.Supp. 460, granted summary judgment against the Union, and the Union appealed.
 
 
 6
 In 1981, Texaco, Inc. hired Heerema Marine Contractors to install a drilling and production platform on the outer continental shelf of the United States. Heerema, a Swiss corporation, installs offshore drilling and production platforms. In connection with this work, Heerema charters a fleet of heavy lift crane ships. One of these ships, the Challenger I, is owned by a Liberian shipping company and flies the Liberian flag. The crew is Spanish and Dutch. For the Texaco installation, the crew was flown from Europe to the United States and, after completing the installation, departed immediately. Heerema agreed that it would install a platform for Chevron Oil Company on the outer continental shelf in December, 1982. Heerema will again use Challenger I and a foreign crew. Shortly after Heerema entered into the contract with Chevron, the Union filed this action.
 
 
 7
 The Union contends that its members are denied employment because foreign crew members are employed in violation of the I.N.A. The Union contends that the I.N.A. is applicable to the outer continental shelf and that foreign workers must be certified under 8 U.S.C. Sec. 1182(a)(14) before they may be employed.[2]
 
 
 8
 The district court held that (1) it lacked subject matter jurisdiction, (2) the action was not ripe for judicial review, (3) the I.N.A. does not apply to the outer continental shelf, and (4) if the I.N.A. is applicable to the outer shelf, it was not violated.
 
 
 9
 We affirm, but on different grounds.
 
 I. SUBJECT MATTER JURISDICTION
 
 10
 The district court held that it lacked subject matter jurisdiction under 28 U.S.C. Sec. 1361 because the appellees do not have a clear duty to act under the I.N.A. or under the Outer Continental Shelf Lands Act[3] (O.C.S.L.A.). Mandamus jurisdiction exists when a plaintiff has a clear right to relief, a defendant has a clear duty to act and no other adequate remedy is available. Sheehan v. Army and Air Force Exchange Service, 619 F.2d 1132, 1140-41 (5th Cir.1980), rev'd on other grounds, --- U.S. ----, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). This duty must be "ministerial and so plainly prescribed as to be free from doubt." Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir.1970); see also Tagupa v. East-West Center, Inc., 642 F.2d 1127, 1129 (9th Cir.1981).
 
 
 11
 Here, appellees argue that the district court lacked subject matter jurisdiction because their statutory duty is not clearly defined. In Knuckles v. Weinberger, 511 F.2d 1221 (9th Cir.1975), this court held that jurisdiction in a mandamus action is not lacking even though the statute requires construction to determine the duties it creates. Id. at 1222. If the appellees' duty is clear after the court interprets the statute, the court has jurisdiction. We, therefore, hold that this court has jurisdiction to determine whether the appellees owe a duty to appellant, and if so, the nature of that duty.
 
 II. RIPENESS
 
 12
 The district court held that this case is not ripe for adjudication because Heerema Marine Contractors is not currently working on the outer continental shelf. We must decide whether Heerema's contract to install an offshore platform in December, 1982, creates a controversy of "sufficient immediacy and reality." Maryland Casualty Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). We believe it does. Heerema installed an offshore platform for Texaco using the foreign crew on the Challenger I. Heerema has agreed to install another one for Chevron. It would be unwise for the Union to wait until the Heerema crew enters the country or commences to construct the platform. The estimated time to complete the installation is less than one month, and the problems connected with obtaining a restraining order or a preliminary injunction would probably be too great for the Union to overcome.
 
 
 13
 Practically all of the issues in this case are purely legal ones. We, therefore, do not believe that waiting for Heerema to engage in additional activities in the performance of its contract would "significantly advance our ability to deal with the legal issues presented nor aid us in their resolution." Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978).
 
 
 14
 III. APPLICABILITY OF THE I.N.A. TO THE OUTER CONTINENTAL SHELF
 
 
 15
 A writ of mandamus may issue only if the A.G. and the INS owe a clear duty to the Union. The existence and nature of any duty owed depends on whether section 1182(a)(14) of the I.N.A. applies to the outer continental shelf.
 
 
 16
 Appellees contend that the 1978 amendments to the O.C.S.L.A. render the I.N.A. inapplicable to the outer continental shelf even if applicable before that time. The O.C.S.L.A., enacted in 1953, was designed to extend "[t]he Constitution and laws and civil and political jurisdiction of the United States ... to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon...." 43 U.S.C. Sec. 1333(a)(1). A limitation on the employment of aliens on the outer continental shelf was deleted from the final version of the bill: "[S]ince all applicable Federal laws are extended to the seabed and subsoil of the outer shelf, the specific provisions respecting aliens are believed unnecessary." S.Rep. No. 411, 83d Cong., 1st Sess. 24 (1953).
 
 
 17
 In 1978, section 1333(a)(1) was amended to include "all installations and other devices permanently or temporarily attached to the seabed." 43 U.S.C. Sec. 1333(a)(1) (as amended in 1978). This amendment "is meant to restate and clarify and not change existing law." H.R.Conf.Rep. No. 1474, 95th Cong., 2d Sess. 80 (1978), reprinted in [1978] U.S.Code Cong. & Ad.News 1450, 1674, 1679. We will not lightly infer that Congress intended to remove the general applicability of the I.N.A. to the outer continental shelf. We see no irreconcilable conflict between section 1356 and the I.N.A. "We must read the Statutes to give effect to each if we can do so while preserving their sense and purpose." Watt v. Alaska, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981).
 
 
 18
 Sections 1356(a)(3) and (c), which outline employment restrictions for aliens, were added in 1978. Appellees contend that the addition of employment provisions in the 1978 amendments means that the I.N.A. is no longer applicable to the outer continental shelf. The Union disagrees. It contends that section 1356(c) is an exception to the I.N.A., but in all other respects, that the I.N.A. remains applicable to the outer continental shelf. The Union's interpretation appears more plausible because it is consistent with Congress's announced intent that the amendments were meant only to "restate and clarify ... existing law." We, therefore, hold that the I.N.A. applies to the outer continental shelf except as modified by 43 U.S.C. Sec. 1356.
 
 
 19
 The Union contends that section 1356(a)(3) is not effective yet. The statute requires the Coast Guard to implement section 1356(a)(3)'s manning requirements by regulations within six months after September, 1978, effective one year after the regulations are promulgated.[4] It was not until March, 1982 that the Coast Guard promulgated regulations which set out manning requirements. They become effective in April, 1983.
 
 
 20
 Although there is language in the statute that regulations are necessary to effectuate the manning requirements, there is no such language for the exceptions to those requirements. Congress adopted exceptions to the manning requirements "to avoid any disruption in OCS [outer continental shelf] activities by this manning requirement." H.R.Conf.Rep. No. 1474, 95th Cong., 2d Sess. 124 (1978), reprinted in [1978] U.S.Code Cong. & Ad.News 1674, 1723. Congress also sought to eliminate the likelihood of retaliation by foreign nations against American workers.[5]
 
 
 21
 As we have already pointed out, the worker certification requirements of the I.N.A. are virtually the same as the manning requirements of section 1356(a)(3), and since the I.N.A. is applicable to the outer continental shelf, it is highly unlikely that Congress intended to delay implementing those exceptions. We, therefore, hold that the exceptions to the manning requirements as set forth in 43 U.S.C. Sec. 1356 are now in effect and the INS is bound by them. See Robertson v. Bradbury, 132 U.S. 491, 493, 10 S.Ct. 158, 158-59, 33 L.Ed. 405 (1889); 2 C. Sands, Sutherland Statutory Construction Sec. 33.08 (4th ed. 1973).
 
 
 22
 One of these exceptions is:(c) The regulations issued under subsection (a)(3) of this section shall not apply--
 
 
 23
 ....
 
 
 24
 (2) to any vessel, rig, platform, or other vehicle or structure, over 50 percent of which is owned by citizens of a foreign nation or with respect to which the citizens of a foreign nation have the right effectively to control, except to the extent and to the degree that the President determines that the government of such foreign nation or any of its political subdivisions has implemented, by statute, regulation, policy, or practice, a national manning requirement for equipment engaged in the exploration, development, or production of oil and gas in its offshore areas.
 
 
 25
 Id. Sec. 1356(c)(2).
 
 
 26
 Challenger I is owned by foreign citizens. We, therefore, hold that the foreign ownership exception is applicable here, and that the crew of Challenger I is exempt from the certification requirements of the I.N.A.
 
 
 27
 The judgment of the district court denying mandamus and dismissing the action is AFFIRMED.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 8 U.S.C. Secs. 1101-1503 (1976 & Supp. V 1981)
 
 
 [2]
 The relevant part of 8 U.S.C. Sec. 1182(a)(14) provides as follows:
 (a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 ....
 (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of aliens who are members of the teaching profession or who have exceptional ability in the sciences or the arts), and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.
 
 
 [3]
 43 U.S.C. Secs. 1331-1356 (1976 & Supp. IV 1980) (as amended 1978)
 
 
 [4]
 43 U.S.C. Sec. 1356(a)(3)
 
 
 [5]
 "The conferees adopted a ... section intended to insure safe operations on all OCS [outer continental shelf] facilities and vessels, and to reconcile the dual concerns of providing the fullest possible employment for Americans in U.S. Outer Continental Shelf activities and eliminating to the fullest possible extent the likelihood of retaliation by foreign nations against American workers in foreign offshore activities." H.R.Conf.Rep. No. 1474, 95th Cong., 2d Sess. 123 (1978), reprinted in [1978] U.S.Code Cong. & Ad.News 1674, 1722